UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CRIMINAL NO: 1:19CR225-1 |
| | ) | |
| Plaintiff, | ) | Violation: |
| | ) | |
| v. | ) | 18 U.S.C. § 1956(h): |
| | ) | Conspiracy to Launder Money |
| AHMED KHIDIR EL KHEBKI, | ) | |
| | ) | |
| Defendant. | ) | |

## UNITED STATES' REPLY TO DEFENDANT'S OPPOSITION TO THE UNITED STATES' MOTION IN LIMINE

### I.   INTRODUCTION

Once again, defendant Ahmed Khidir El Khebki ("Defendant") has ignored this Court's filing deadlines and helped himself to an extension. He filed his opposition to the United States' motion in limine ("MIL") late—following the expiration of his self-selected deadline—prejudicing the United States by shortening the time it had to respond to his opposition. Dkt. 83. But even with that extra time, Defendant has offered no basis for the Court to deny the United States' MIL.

Defendant seeks to cross examine Special Agent Brenden Shelley ("Shelley") of the Department of Homeland Security, Homeland Security Investigations ("HSI"), about statements that Defendant claims that Shelley made over a decade ago in a case from another jurisdiction. Defendant has repeatedly refused to identify the case. Defendant has also repeatedly refused to identify Shelley's specific statements that he claims are inconsistent, explain how those statements are inconsistent, or provide a reasonable factual basis for his proposed cross examination, which will include questions that accuse Shelley of wrongdoing.

1

As Defendant's opposition makes clear, Defendant does not seek to offer evidence of an adverse credibility finding. Because no court has found that Shelley has been inconsistent or lied, Defendant will instead attempt to *prove* (supposedly with evidence that he had yet to identify) that a statement Shelley made in an unrelated case a decade ago was false.

The Sixth Amendment sweeps broadly in allowing cross examination of a witness. But it does not command that the Court conduct an entirely separate, mini trial to determine the veracity of statements made more than a decade ago in another case from another jurisdiction. Defendant has not offered a good faith basis for his proposed line of cross examination, which will be on matters that are entirely collateral to the issues in this case—issues that were not even fully addressed in the other case; therefore, Defendant's cross examination of Shelley will be a complete waste of this Court's time, further delay Defendant's sentencing, and is neither required nor advisable under any reading of the Constitution, the Rules of Criminal Procedure, or relevant caselaw. For these reasons, and the fact that Defendant's proposed cross examination is unfairly prejudicial, the Court should grant the United States' MIL.

## II.   ARGUMENT

### A.  Defendant's Opposition is Not Timely

The Court granted Defendant's request to have until December 11, 2023 to file his opposition to the United States' MIL and issued an Order directing Defendant to file his opposition by that date. Not for the first time, Defendant blew past the deadline without first informing the United States or the Court or seeking leave of Court and filed his opposition a day late. Dkt. 83.[1] *See* General Order § V (Motion for Extension of Time). Instead, Defendant

---

[1] Defendant has consistently taken a cavalier approach to the Court's orders, filing deadlines, and local rules. For example, as the United States noted in its sentencing position, Defendant never filed or served his objections to the presentence report with the Court or on the United States. And he took the liberty of filing his sentencing

2

assumed the Court would extend his filing deadline *ex post facto* simply because his defense counsel "was unable to complete the Opposition in a timely fashion and review it with [Defendant]." Dkt. 83 n.1. That "explanation" hardly constitutes the type of excusable neglect necessary for the Court to accept Defendant's late filing. *See* Fed.R.Crim.P 45(b)(1)(B) (court may extend deadline "after the time expires if party failed to act because of excusable neglect.") Under the local rules of this Court, Defendant's willful disregard for the Court's filing deadline ends the matter and permits the Court to grant the United States' MIL as conceded without further inquiry. *See* LCrR 47(b) (failure of party to file opposition within prescribed time permits Court to "treat the matter as conceded.").

### B. The Court Should Grant the United States' MIL Because Defendant Has Not Identified or Established a Foundation for Inconsistent Statement Evidence

If the Court does consider Defendant's opposition, it should still grant the United States' MIL and prohibit Defendant from using Shelley's 2011 grand jury testimony in the Eastern District of Virginia ("EDVA") to impeach him. At the outset, it is critical to note: there is no finding related to Defendant's allegations, by any court or government office, that Shelley made inconsistent statements, perjured himself, or was in any way not credible. Instead, Defendant would argue, based on his interpretation of evidence he refuses to identify that Shelley made a misstatement in his grand jury testimony.

To the extent the impeachment relies on inconsistent statements, Defendant has failed to (and refuses to) identify those statements, and he has not (and cannot) establish that Shelley's statements were inconsistent.

---

memorandum two days after the filing deadline set by the Court, which improperly allowed him to first review the United States' timely filed position.

3

1. <u>Defendant Refuses to Identify the Purported Inconsistent Statements</u>

On November 22, 2023, Defendant advised the United States that he intended to impeach Shelley using inconsistent statements that he claimed that Shelley made before a grand jury in an EDVA case that Defendant refused to identify. Dkt. 78. The United States asked Defendant to identify the statements and the EDVA case in which Shelley purportedly made the inconsistent statements, but Defendant refused. *Id.*

A few days later, the United States again asked Defendant to identify Shelley's specific inconsistent statements, but again, Defendant refused. Defendant also refused to identify the statements when the United States asked him to proffer the statements at his sentencing hearing, and he deliberately avoided identifying them in his opposition, despite the colloquy at the sentencing hearing. Dkt. 83.

Defendant's steadfast refusal to identify the specific statements that he intends to use to attempt to impeach Shelley is gamesmanship and a violation of Federal Rule of Evidence 613(a), which requires Defendant to show or disclose the statements to the United States upon its request. Rule 613(a)'s disclosure requirement is not discretionary – "[i]t flatly commands disclosure [of the statements] to opposing counsel." *See United States v. Lawson*, 682 F.2d 688, 694 (2d Cir. 1982).[2] Once the United States requested that Defendant disclose Shelley's purported inconsistent statements, it was incumbent on Defendant to make the disclosure. His repeated refusal to do so demands a firm response from the Court in the form of an order granting the United States' MIL.

---

[2] Defendant believes that, perhaps as with other rules and deadlines, these legal principals do not apply to him. Dkt. 83 at 5 ("The defense is not obliged to disclose cross-examination" about Shelley's alleged inconsistent statements). He is mistaken and offers no justification for his view.

4

2. <u>Defendant Has Not Established that Shelley Made Inconsistent Statements</u>

Defendant's coy inuendo has left the United States to guess as to the identity of the EDVA case in which Shelley supposedly made the inconsistent statements and the specific statements that Defendant may claim are inconsistent. In its MIL, the United States speculated that Defendant intends to regurgitate baseless allegations of perjury and wrongdoing that were first made against Shelley by Sandi Rhee ("Rhee"), a defense attorney who appears to be married to Defendant's counsel. Dkt. 78 at 3.[3] Assuming the United States is correct, the Court should grant the United States' MIL because Shelley did not make any inconsistent statements in that case or perjure himself.

To the best of the United States' understanding, in approximately 2009, Shelley was part of multiagency investigation of the transnational criminal organization MS-13. During the investigation, Shelley and other investigators interviewed Miguel Santigo Ramirez ("Ramirez"), who at the time was cooperating with the United States following his guilty plea to Mann Act charges related to Raminez's role in a scheme to traffic women for prostitution.

Ramirez told Shelley and other investigators that Raminez worked for Ramon Raudel Campos Murillo ("Campos Murillo") until Campos Murillo fled to Mexico and Ramirez purchased Campos Murillo's share of the prostitution ring. Shelley and other investigators documented Ramirez's statements in their handwritten notes. Other witnesses, including women who Campos Murillo trafficked, and other codefendants identified Campos Murillo as someone

---

[3] The relationship between Defendant's counsel and Rhee explains why Defendant's counsel "was present when the matter of Special Agent Shelley's false testimony was brought to the attention of the prosecutors in the United States District Court for the Eastern District of Virginia." Dkt. 83 at 4. As discussed in the following paragraphs, given defense counsel's apparent familiarity with the facts of the Campos Murillo case and the circumstances under which Rhee and her defense investigator obtained inconsistent statements from Ramirez, Defendant cannot credibly claim that he has a reasonable and good faith basis to cross examine Shelley about the Campos Murillo case and accuse Shelley of perjury and other wrongdoing. Dkt. 83 at 4.

who occupied a leadership role within the prostitution ring.

In 2011, Shelley appeared before a grand jury in EDVA and testified that Ramirez had identified Campos Murillo as the leader of the prostitution ring prior to Campos Murillo absconding and Ramirez assuming control of Campos Murillo's share of the operation. Thereafter, the grand jury returned an indictment against Campos Murillo.

In May 2021, Mexican authorities captured Campos Murillo and extradited him to the United States.  Rhee represented Campos Murillo, who pleaded guilty.  At some point, Rhee and her defense investigator, Thomas Buckley ("Buckley"), contacted Ramierz, who was living in Mexico and who supposedly executed an affidavit prepared by Buckley in which Ramirez reiterated that he and Campos Murillo prostituted women but denied working for Campos Murillo.  In this affidavit, Ramirez said that multiple men were trafficking women and girls, but that no one was in charge.

Rhee seized upon this apparent inconsistency between Ramirez's 2010 statement (when he was cooperating with law enforcement) and his 2021 statement (from Mexico, through Rhee's investigator) to accuse Shelley of perjury.

There are multiple reasons to question the validity of Ramirez's 2021 statements.  First, Ramirez's 2021 affidavit conflicts with the probation officer's statement in Ramirez's 2010 presentence report which states, "Ramirez advised *that when he first became involved in the prostitution business, he was working for someone*.  However, that person eventually left the area, and gave Ramirez his cellular telephone, allowing Ramirez to continue to run the prostitution business." (Emphasis added).  Second, in his affidavit, Ramirez acknowledged that others *had*, in fact, identified Campos Murillo as the leader—even though Ramirez now claimed there was no leader.  Finally, notwithstanding Ramirez's 2021 claim that no one was in charge of

the enterprise, one of Campos Murillo's codefendants acknowledged Campos Murillo's leadership of the conspiracy in his plea agreement. And that codefendant—Campos Murillo's nephew—argued in his own sentencing memorandum that "his uncle … started and r[a]n the business of prostitution."

These facts and others were part of an investigation that determined that Rhee's allegations against Shelley lacked merit.

Assuming Defendant intends to attempt to impeach Shelley with his grand jury testimony from the Campos Murillo case, the Court should bar Defendant from doing so because it is abundantly clear that Shelley did not make inconsistent statements before the grand jury. Rather, the inconsistency lies in the statements Raminez made to Shelley in 2010 and to Rhee and Buckley in 2021, a decade after Ramirez spoke to Shelley, after Ramirez had returned to Mexico. The United States is not aware of any rule in either the common law or the Federal Rules of Evidence that permits Defendant to impeach Shelley with the inconsistent statements of another person and, therefore, the Court should bar Defendant from cross examining Shelley about any aspect of the Campos Murillo case. Dkt. 83 at 3-4.

### C. Defendant Has Not Established That He Has a Reasonable Basis for Accusing Shelley of Misconduct

The Court should also prohibit Defendant from cross examining Shelley about his 2011 grand jury testimony in EDVA because Defendant has not established that he has "a reasonable basis for asking questions on cross-examination which tend to incriminate or degrade" Shelley. *See United States v. Wilson*, 605 F.3d 985, 1012 (D.C. Cir. 2010) (internal citations omitted). It is clear from Defendant's opposition that he will accuse Shelley of a crime on the stand. Dkt. 83 at 3 (claiming that Defendant's counsel "was present when the matter of . . . Shelley's *false* testimony was brought to the attention of the prosecutors" in EDVA and indicating that

Defendant intends to cross examine Shelley with questions such as: "Isn't it true that you testified falsely under oath before a grand jury in [EDVA] in December of 2011."). Defendant cannot ask such questions of Shelley without first providing a factual basis to support his proposed line of cross examination. Because Defendant has refused to do so, the Court should grant the MIL and prohibit the proposed line of questioning.

The facts summarized above demonstrate that Shelley engaged in no wrongdoing during his grand jury appearance in the Campos Murillo case and, therefore, Defendant cannot credibly claim that he possesses facts that support a genuine belief that Shelley committed perjury or engaged in other wrongdoing before the grand jury. *See Wilson*, 605 F.3d at 1012 ("As a general matter, the questioner must be in possession of some facts which support a genuine belief that the witness committed the offense or the degrading act to which the questioning relates.") (internal quotations omitted). Defendant has not met his burden of showing that his proposed questioning of Shelley is supported by facts, particularly given the prejudicial nature of the line of questions. *See Wilson*, 605 F.3d at 1012. Rather, Defendant's proposed cross examination of Shelley appears to be a ploy to intimidate Shelley not to testify, by threatening him with sanctions and damage to his career.

### D. The Court Should Prohibit Defendant from Cross Examining Shelley About Matters That are Remote in Time and Collateral to This Case

The law of this Circuit prohibits Defendant from crossing examining Shelley on matters that are collateral to the issues in this case. *See United States v. Tarantino*, 846 F.2d 1384, 1409-1410 (D.C. Cir. 1988) ("A commonly used test of collaterality asks: Could the fact, as to which error is predicated, have been shown in evidence for any purpose independently of the contradiction?") (internal quotations omitted); *United States v. Libby*, 475 F.Supp.2d 73, 98-99 (D.D.C. 2007) ("[T]he basic test for determining whether a matter is collateral is whether facts

8

described in the statement could be relevant to any relevant purpose other than contradicting the witness's testimony"). Questioning Shelley about his 2011 grand jury appearance, particularly testimony that Shelley provided more than a decade ago in a MS-13 and prostitution case from another jurisdiction, will do nothing to help the Court resolve the role Defendant played in the embezzlement scheme at the Kuwait Embassy Health Office or the appropriate amount of loss attributable to Defendant at sentencing. Defendant wishes to cross examine Shelley about his 2011 grand jury appearance so he can argue that the Court should not rely on Shelley's testimony at sentencing—not because the purported contradictions in that case have anything to do with the substance of the claims in this one. As such, Defendant is barred by the judicially-recognized "specific contradiction rule" from cross examining Shelley on these matters, and the Court is well within the power conferred to it by Federal Rule of Evidence 403 to prevent him from doing so, particularly when, as here, Defendant's cross examination of Shelley will waste the Court's time and unduly delay Defendant's sentencing. *See Tarantino*, 846 F.2d 1384, 1409 ("The 'specific contradiction' rule . . . states that a witness may not be impeached by extrinsic evidence (contradiction by another witness or evidence) on a collateral issue" and "serves to avoid confusion of the issues and undue extension of the trial. . . . [It] is a particular instance of the trial court's general power under [Rule] 403 to exclude evidence if its probative value is substantially outweighed . . . by considerations of undue delay, or waste of time.") (internal citations, quotations, and alterations omitted).

The Court should also exercise its power under Rule 403 to exclude Defendant from cross examining Shelley about his 2011 grand jury appearance in EDVA because of the danger of unfair prejudice. *See Libby*, 475 F. Supp.2d at 99. ("[B]ecause the rule against impeachment by extrinsic evidence on collateral matters is grounded in Rule 403, the Court may properly

9

weigh the probative value of such evidence against the costs of admitting it, including prejudice, delay, and waste of time."). As set forth above, Defendant's proposed cross examination appears likely to center on the inconsistencies between Ramirez's 2010 and 2021 statements – neither of which has anything to do with Shelley's credibility. Nevertheless, Defendant has represented to both to the Court and the United States that if Shelley testifies truthfully, Defendant intends to report Shelley to HSI's Office of Professional Responsibility ("OPR"), which Defendant acknowledged during the sentencing hearing could damage Shelley and his career. Dkt. 83 at 5 ("If Agent Shelley denies testifying falsely, and in undersigned counsel's professional judgment, such denial was false, it would also warrant a referral" to OPR.). In fact, Defendant has gone as far as to claim that Shelley should obtain counsel, because Defendant's proposed questioning of Shelley will require Shelley to invoke his Fifth Amendment rights. *Id.* ("[U]ndersigned made the disclosure . . . to allow Special Agent Shelley time to retain counsel to advise him of his rights against self-incrimination."). Permitting Defendant to question Shelley with factually-unsupported allegations of perjury and wrongdoing that supposedly occurred in another case from another jurisdiction more than a decade ago on matters collateral to the issues in this case and then using Shelley's truthful responses to those questions to accuse Shelley of a crime and refer him to OPR is exactly the type of unfair prejudice Rule 403 is designed to keep out of the courtroom.[4] *See United States v. Pugh*, 436 F.2d 222 (D.C. Cir. 1970) ("We do not mean to suggest that the reprehensible practice of some trial counsel in asking highly prejudicial questions of witnesses with the almost certain knowledge that the insinuations are false should be

---

[4] The age of Shelley's supposed statements before the EDVA grand jury certainly weight against permitting Defendant to cross examine Shelley about them. Even if Shelley had a criminal conviction from 2011, Defendant would not be permitted to question Shelley about that conviction in 2024. *See* Fed. R. Evid. 609(b) (generally prohibiting cross examination about criminal convictions that are more than 10 years old.) The Court should keep this rule in mind when considering whether to permit Defendant to cross examine Shelley about truthful testimony Shelley provided more than ten years ago in an unrelated case on matters entirely collateral to those at issue here.

10

condoned. False insinuations in a question, even if followed by an indignant denial from the witness, undoubtedly leave a trace of prejudice in the jury's mind."); *see also United States v. Lin*, 101 F.3d 760, 767 (D.C. Cir. 1996) ("The Confrontation Clause does not bar a judge from imposing reasonable limits on a defense counsel's inquiries. District courts enjoy wide discretion to control cross-examination.") (internal citations, quotations, and alterations omitted).

### III.    CONCLUSION

For the reasons set forth above, the Court should grant the United States' MIL and prevent Defendant from cross examining Shelley about any matters related to Shelley's 2011 grand jury appearance in EDVA.

Should the Court deny the motion, the United States respectfully requests that the Court hold a separate evidentiary hearing in advance of sentencing to determine whether Defendant's claims regarding inconsistent statements, perjury, and wrongdoing are factually supported. *See Lin*, 101 F.3d at 767-768.

Date: December 18, 2023

           Respectfully submitted,

           MARGARET A. MOESER, ACTING CHIEF
           MONEY LAUNDERING AND ASSET RECOVERY SECTION

      By:  */s/ Jonathan Baum*
           JONATHAN T. BAUM
           SHAI BRONSHTEIN
           Trial Attorneys
           Money Laundering and Asset Recovery Section
           United States Department of Justice
           1400 New York Avenue, NW
           Bond Building, Suite 900
           Washington, DC  20005
           Telephone: (202) 514-1263
           Email: jonathan.baum@usdoj.gov
                 shai.bronshtein@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of December 2023, I caused a copy of the foregoing reply to be served by the Court's electronic case filing system on defendant's counsel:

Robert Feitel
Attorney and Counselor
Email: rf@rfeitellaw.com

*Jonathan Baum*
_____
Jonathan T. Baum
Senior Trial Attorney, Criminal Division
Money Laundering and Asset Recovery Section
United States Department of Justice